# Mando, etc., v. Wesleyville School District

*Louis R. Benacci,* for plaintiff.

*James W. Evans,* for defendant.

LAUB, J., March 24, 1952.—This is a motion for summary judgment in mandamus as provided by Pa. R.C.P. 1098. The only pleadings before us are the complaint and plaintiffs' motion for judgment. From the former the following facts appear:

Shirley Ann Mando was suspended from school February 26, 1952, by William B. McKee, principal of the Wesleyville High School. Thereafter, on March 14, 1952, upon application of Shirley Ann and her parents, defendant school board held a hearing which was attended by the school board, the school teacher involved, William McKee, a teacher-witness, plaintiffs, their counsel, and the school board solicitor.

Testimony was taken at the hearing but the witnesses were not sworn. While counsel for plaintiffs was cross-examining the teacher who, we assume, caused Shirley Ann's dismissal, the chairman of the board stated that he "had already made up his de-

cision." Plaintiffs immediately, and upon advice of their counsel, withdrew from the hearing without offering any testimony. This action followed.

Section 1318 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §13-1318, provides as follows:

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent, supervising principal, or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board."

There is nothing in this record indicating the nature of the difficulty which brought about Shirley Ann's suspension nor is there any allegation that the school board extended the suspension or expelled her following the hearing above mentioned.

Plaintiffs strongly urge that the words "proper hearing" imply that the school board must swear witnesses and in every way follow the pattern set for preliminary hearings in criminal cases. In support of this contention they cite Geiger et al. v. Milford School Independent District, 51 D. & C. 647, which sustains this position. On the other hand, in Com. ex rel. Mifflin Township School District v. Hartzel, 23 Dist. R. 739, a case involving the removal of a school district secretary, this was said (p. 742):

"If the legislature had intended such hearings should be conducted like public trials they would have expressly said so in the act."

Examination of the Public School Code reveals that the word "hearing" is used several times in other parts of the act. In section 1031 there is a provision that the

Superintendent of Public Instruction hold a hearing to dispose of objections to the election of a county superintendent. In this section there is an express provision that the superintendent may require, under oath, such evidence as is deemed necessary and proper. In section 514 the word "hearing" is again used, this time in connection with the removal of school district officers, employes or appointees. Substantially the same provisions that there obtain may be found in section 1034 relating to the removal of county superintendents by the Superintendent of Public Instruction.

Of importance in this connection are the provisions of sections 1126, 1127, 1128 and 1129. These sections relate to the removal of professional employes by the school board and set forth a full and complete system for the holding of public hearings after written notice. The power of subpoena is conferred upon the board, witnesses are to be heard under oath and any member of the board is empowered to administer the same. The following sections of the act then provide for the taking of appeals from adverse decisions.

From this it is apparent that the legislature was fully cognizant that different interpretations of the word "hearing" are possible and frequent. It is also apparent that the legislature never intended that a formal hearing, including the taking of sworn testimony, be held in cases involving the dismissal or suspension of a pupil. Had it so intended it could easily have made such requirement, and in unmistakable language, by extending the provisions of sections 1126, 1127, 1128 and 1129 to every "hearing" described in the act. Instead, the provisions of these sections were restricted to the dismissal of professional employes only.

It has long been the policy of the law to protect children from the adverse results which, it has been recognized, usually follow public hearings of their indiscre-

tions. This policy has found expression in the Juvenile Court Law of June 2, 1933, P. L. 1433, as amended, 11 PS §243, et seq., which, in section 4, (3), 11 PS §246, expressly provided: "There shall be no preliminary hearings in any cases affecting dependent, delinquent or neglected children under the age of eighteen years." It would be an absurdity to proscribe a public hearing in the case of a delinquent child on the one hand, and on the other to require it where a child merely infracted a school rule, subjecting such child to all the attendant, deleterious effects which trained observers have discovered usually follow such hearings. It would seem apparent that the legislature had this in mind when it excluded pupil dismissal problems from the type of hearing described above.

While we recognize that expulsion or suspension from school is a serious thing to a child whose education is an important element of his development, we must also recognize that discipline is an absolute necessity in the operation of a school. A school with no discipline is no school at all. In this respect then, the welfare of the majority of the students must be made paramount to that of the individual. This is undoubtedly another reason why the legislature never intended full dress, formal hearings in matters involving school discipline. A contrary conclusion would undermine the entire disciplinary machinery of the school system.

But, even if we are wrong in the conclusions just reached, it is still apparent that plaintiffs may not have the summary judgment for which they pray. Pa. R.C.P. 1098 provides that plaintiff may have summary judgment if his right thereto is clear. The right here is not clear. These plaintiffs base their action upon three things. First, they complain that the witnesses were not sworn; second, they complain that the chairman of the board expressed himself as having reached a decision before the hearing was over. The third rea-

son is that "from the beginning it was obvious that a proper hearing . . . would not be granted. . . ."

Nowhere in the complaint is there an allegation that plaintiffs demanded that the witnesses be sworn nor that they offered testimony, sworn or otherwise, of their own. There is no allegation that the chairman's decision, so prematurely reached, was adverse to plaintiffs. No facts, other than those recited above, appear in substantiation of the complaint that it was obvious a proper hearing would not be granted.

It may well be that, had plaintiffs demanded that the witnesses be sworn, the board would have sworn them, although we find no provision authorizing such procedure except in the case of professional employes. But plaintiffs may not now complain of a procedure in which they, by their silence, acquiesced. Furthermore, by their act in walking out before the hearing was over, they deprived the board of the opportunity to correct any procedural errors.

The expression of the board chairman mentioned above is not as important as it appears at first blush. While it goes without saying that one who occupies a quasi-judicial position must not make up his mind until all the facts have been heard and the arguments disposed of, it does not follow that a party has been injured by a premature decision unless it appears that the decision was adverse. Furthermore, it seems unnecessary to point out that the chairman had but one vote and, regardless of the nature of his untimely opinion, it would not necessarily be a conclusive one. Who can say, at this juncture, what his decision would have been had he had an opportunity to hear the pupil's version of the affair?

If there was anything untoward in the handling of the hearing other than the alleged errors recited above, the pleadings do not disclose it. All we have before us is a statement by plaintiffs which, in all its aspects,

indicates unusual alacrity in seeking out the processes of this court. Such promptitude would exhibit no vice if done in good faith and after the voicing of timely objections to the board, coupled with a sincere offer to be heard by it on the merits. The absence of these elements must be treated as a waiver of any existing faults and of a desire to be heard.

And now, to wit, March 24, 1952, the motion for summary judgment is denied.